## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| SABRINA GUERRERO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| THE LINCOLN NATIONAL LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW**, Plaintiff Sabrina Guerrero, and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

1

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq*., and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## **PARTIES**

6. Plaintiff, Sabrina Guerrero (hereinafter "Plaintiff" or "Ms. Guerrero"), was at all relevant times, a resident of the City of Kodak, County of Sevier, State of Tennessee.

7. The Plaintiff was employed by Gentiva Health Services, Inc., at all relevant times.

8. Plaintiff alleges upon information and belief that the Group Long Term Disability Insurance for Employees of Gentiva Health Services, Inc. (hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

2

9. The Plan provides eligible employees with disability income protection as defined by the Plan.

10. Plaintiff alleges upon information and belief that Gentiva Health Services, Inc., is the Plan Sponsor and Plan Administrator of the long-term disability Plan.

11. The Lincoln National Life Insurance Company (hereinafter "Lincoln") is the underwriter for Group Policy Number GF3-890-LF0132-01.

12. Lincoln's claim number is 12827197 for the instant matter.

13. Lincoln National Life Insurance Company (hereinafter "Lincoln") is an insurance company authorized to transact the business of insurance in this State and may be served with process by and through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243, or at its home office at located at 1301 South Harrison Street, Fort Wayne, Indiana 46802.

## **FACTS**

14. Defendant Lincoln was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

15. The long-term disability Plan is fully insured by Lincoln under Group Policy Number GF3-890-LF0132-01.

16. The Plaintiff timely filed an application for benefits under the Plan, was

3

subsequently denied benefits, Plaintiff timely appealed, and Lincoln issued its final denial on June 17, 2024.

17. The Plaintiff was employed as a Licensed Advanced Practice Social Worker (Hospice/Medical Social Worker) by Gentiva Health Services, Inc., from September 26, 2016, to February 25, 2022, at its location in Morristown, Tennessee, and as such, Plaintiff was thereby a participant or beneficiary of the Plan and is covered by the policies that provides benefits under the Plan.

18. The Plaintiff ceased work on or about February 25, 2022, due to a disability while covered under the Plan.

19. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

20. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

21. Having submitted her appeal, and as confirmed by Lincoln, Plaintiff exhausted her administrative remedies.

22. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

23. The relevant long-term disability policy in this matter initially defines total disability as an inability to perform each of the main duties of her own occupation, and then, after 24 months of eligibility, the policy defines total disability as an inability to perform each the main duties of any occupation which her training, education or experience will reasonably allow.

24. Plaintiff is entitled to long term disability benefits as she has met the long-term disability Plan's requirements, and her disability continues to prevent her from performing the main duties of her own occupation as well as the main duties of any occupation which her training, education or experience will reasonably allow.

25. If disabled pursuant to the terms of the policy, Plaintiff, who was paid long-term disability benefits from May 8, 2022, through July 27, 2023, is entitled to a monthly gross long-term disability benefit of $3,072.57, offset by a monthly Social Security disability benefit of $1,927.00 (there are no auxiliary beneficiaries), for a net monthly long-term disability benefit of $1,145.57, from July 28, 2023 to March 9, 2036, such that she is owed $13,626.01 in back benefits, $121,155.93 in future benefits (using 5.0 % to discount to net present value), with no overpayment owed (Plaintiff paid Lincoln back $19,945.00 from her Social Security disability back benefits to extinguish the overpayment), for a total long-term disability benefit of

$134,781.94.

26. Plaintiff submitted evidence to Lincoln supporting her disability. Ms. Guerrero suffers from post-Covid 19 condition, fatigue, bilateral knee osteoarthritis, generalized muscle weakness, right knee contusion, major depressive disorder, generalized anxiety disorder, and obsessive-compulsive disorder. On March 19, 2024, Floyd E. Phillips, Jr., M.D., Ms. Guerrero's treating internal medicine specialist, indicated his patient continues with post-Covid fatigue, shortness of breath with activity, poor concentration, requires frequent daytime napping, and is unsteady on her feet. In terms of restrictions and limitations, Dr. Phillips indicated Ms. Guerrero can sit for 3 hours out of an 8-hour day for 1-hour at a time; stand or walk for 30 minutes for 10 minutes at a time; frequently lift/carry 1-5 pounds, occasionally 1-10 pounds but nothing heavier; occasionally reach above shoulders and use hands for fine manipulation, infrequently stand on a hard surface, and never bend at her waist; it is reasonable if she elevates one or both lower extremities for at least 1-hour during a normal workday; requires at least 30-minutes of bed-rest during a normal workday; has problems with stamina and endurance which would require her to take, at least 3 days a week, an extra, unscheduled rest-break of at least 10-minutes in addition to the breaks normally allowed in a competitive work

6

environment; has moderately severe pain; has extreme fatigue; would be off-task more than 10% of any given workday; and would be absent from work at least 2 days during any given month. Accordingly, Dr. Phillips said Ms. Guerrero would not be a reliable and dependable employee in a normal workday or workweek.

27. Lincoln consultant Mahdy Flores, D.O. (family medicine, preventive medicine, occupational medicine), indicated Ms. Guerrero has functional deficits secondary to post-Covid symptoms including shortness of breath, dyspnea on exertion, fatigue and generalized muscle weakness. She also has functional deficits secondary to bilateral knee pain and right knee contusion. Dr. Flores admitted these impairments warranted the placement of restrictions and limitations within the period of review and on-going. However, Dr. Flores placed Ms. Guerrero within a sedentary residual functional capacity. This is inconsistent with the evidence in the medical record which indicates a less than sedentary level of functioning. However, Dr. Flores did concede that the medical management recommended by the provider and followed by Ms. Guerrero is clinically reasonable and consistent with the level of severity of the medical conditions. With respect to Lincoln consultant Warren Taff, M.D. (psychiatry), he indicated that Ms. Guerrero suffered from no psychiatric deficits requiring restrictions and

7

limitations.

28. Job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, chronic absenteeism, and being off task more than 10% of the work period. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D. Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D. Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D. Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D. Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D. Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D. Mich., 2013).

29. An ability to perform the material and substantial duties of any full-time occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc.*, 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

30. Lincoln relied on medical consultants for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no

meaningful impact on her functionality without addressing her work reliability, consistency, substantial capacity, and steady attendance and dismissed her subjective complaints.

31. Lincoln relied, *inter alia*, on third party vendors, including Exam Coordinators Network (Dr. Flores and Dr. Taff), to conduct medical file reviews during the administrative appeal of Ms. Guerrero's disability claim.

32. Regarding Exam Coordinators Network, it is a subsidiary of Genex. In 2010, Genex bought the Life Insurance Company of North America's disability case management business. At one time Genex's website provided context for its "cost cutting" mission and the fact that it only serves the insurance industry: "For over 30 years, Genex has been the recognized industry leader for managing disabilities" and "Genex's Disability…Absence Management Services provide high-quality, customizable services driven by specialized disability management expertise to help payers reduce claims costs…" and "Specialized, customizable services delivered by in-house disability experts help you reduce claims costs…" *See*, *e.g.*, *Jones v. Life Insurance Company of North America*, Case No. 2:19-cv-04669-DLR (D. Ariz.). The conflict of interest is clear.

9

33. There are no challenges to Plaintiff's credibility. In other words, Ms. Guerrero's treating physicians have directly addressed her reliability, consistency, substantial capacity, psychological stability, and steady attendance, and have provided limitations and restrictions which preclude competitive employment. Lincoln's medical consultant has failed to substantively account for, much less address, any of these issues. Lincoln's medical consultants also ignored or dismissed Plaintiff's pain and related complaints of fatigue and diminished concentration as subjective.

34. Ignoring evidence of pain or other disabling conditions because it is subjective is arbitrary and capricious. *Miles v. Prudential Life Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013).

35. There is no requirement in the instant policy that Plaintiff provide *only* objective medical evidence or other objective indica of disability. Since the policy does not say it, Lincoln does not have the authority to require it. *See, e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct. 2459, 2468 (2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011); *Carradine v. Barnhart,* 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v. Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal); *Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908, 917 (N.D. Ill. 2013).

36. The instant policy allows for independent medical examinations and functional capacity examinations. Lincoln failed to conduct any such examinations. All Lincoln's opinions come from file reviews. Non-examining evidence has little value in evaluating pain, fatigue or impaired focus, concentration, or cognition. *See*, *e.g.*, *Kalish v. Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F. Supp. 2d 942, 954 (S.D. Ohio 2004); *Meyer v. MetLife*, 341 F. Supp. 2d 865 (S.D. Ohio 2004); *Black v. Unum Life Insurance Company of America*, 324 F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

37. Significantly, none of Ms. Guerrero's reported activities, or activities attributed to her, were inconsistent with her disability. In any event, consideration must be given regarding the modifications and help an individual requires for activities. *Hoover v. Berryhill*, 2017 WL 5494565, at *4 (N.D. Ind. Nov. 16, 2017); *Diedrich v. Berryhill*, 874 F.3d 634, 642-643 (9th Cir. 2017 (court improperly took note of certain daily activities that plaintiff could perform, such as bathing, cooking, taking care of her cat, chores around the house, shopping, paying bills, and using a checkbook, but ignored other evidence showing the difficulties plaintiff faced in everyday life); *Brown v. Commissioner Social Security Administration*, 873 F.3d 251,

269-270 (4th Cir. 2017) (court noted various of plaintiff's activities such as cooking, driving, doing laundry, collecting coins, attending church and shopping, but failed to acknowledge the limited extent of those activities as described by the plaintiff or explain how those activities showed that he could sustain a full-time job); *Herrold v. Colvin*, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) (7th Circuit repeatedly criticizes credibility determinations based on a plaintiff's ability to take care of her personal hygiene, children, or household chores) (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); and *Blow v. Astrue*, 2012 WL 3233621, at *9 (N.D. Ind. Aug. 6, 2012) (finding improper reliance on daily activities when others performed almost all of the household chores and any activities the plaintiff could perform were at a slower pace with frequent breaks).

38. Lincoln's policy contained an "offset" provision that required Plaintiff to apply to the Social Security Administration for benefits (as the offset applies to benefits Plaintiff received or is eligible to receive). If she won her Social Security case, then not only are future benefits from Lincoln reduced by the amount of the monthly check from Social Security, but to the extent that any back benefits from Social Security overlap with benefits Lincoln has already paid, Lincoln gets to recoup these benefits from the Plaintiff. Plaintiff applied for and was awarded Social Security disability benefits at

12

the initial level on September 26, 2023. Plaintiff was awarded disability back to February 26, 2022, with her initial month of entitlement being August of 2022.

39. Lincoln referred Plaintiff to Brown & Brown Insurance Absence Services Group ("Brown & Brown") to pursue her Social Security disability benefits. Plaintiff hired Brown & Brown. Lincoln provided Brown & Brown with Plaintiff's medical records. Brown & Brown used those medical records to obtain Social Security disability benefits for Plaintiff at the initial level. Then Brown & Brown recouped the $19,945.00 overpayment from Plaintiff and sent it to Lincoln. Nevertheless, Lincoln terminated Plaintiff's long-term disability benefits.

40. The Plaintiff has now exhausted her required administrative remedies for her long-term disability benefits under the Plan pursuant to ERISA or such administrative remedies are deemed exhausted and/or her long-term disability benefits are deemed denied.

41. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

42. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

43. Defendant Lincoln was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

44. Defendant Lincoln allowed its concern over its own funds to influence its decision-making.

45. Defendant has acted under a policy to take advantage of the potential applicability of ERISA to claims.

46. Defendant's administrative process did not provide Plaintiff with a full and fair review; by way of example, its denial letters did not contain the specific reasons for the denial and did not advise Plaintiff of the information Defendant required in order to approve her continuing benefits.

47. The disability insurance policy does _not_ provide Lincoln with discretionary authority.

48. In the alternative, relevant state law bans any such clause purporting to confer Lincoln with discretionary authority.

49. At all times relative hereto, Lincoln has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Lincoln's own assets with each payment depleting those same assets.

50. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Lincoln is an ERISA fiduciary.

51. Lincoln, as an ERISA fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009). Indeed, Liberty Life Assurance Company of Boston, now Lincoln, answered an ERISA complaint in *Ansari v. Liberty Life Assurance Company of Boston*, Case No.: 1:17-cv-4674-MHC (N.D. Ga. 2017). In paragraph 38 of its answer Lincoln admitted that as an ERISA fiduciary it must "carry out its duties with respect to the plan by placing the interests of the Plan and its participants ahead of its own."

52. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 51 of this complaint.

53. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

54. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 53 of this complaint.

15

55. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or continuation as well as that which tends to favor claim declination or termination.

56. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 55 of this complaint.

57. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and resolve undeterminable issues in its insured's favor.

58. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 57 of this complaint.

59. Under ERISA, a fiduciary has the obligation to read, interpret and understand all the pertinent medical information with sufficient clarity so as to be able to make a fair, objective and thorough evaluation of its insured's claims for disability benefits.

60. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 59 of this complaint.

61. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

62. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 61 of this complaint.

63. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

64. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 63 of this complaint.

65. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

66. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 65 of this complaint.

67. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

68. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 67 of this complaint.

69. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

70. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 69 of this complaint.

71. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

72. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 71 of this complaint.

73. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

74. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 73 of this complaint.

## CAUSE OF ACTION
## FOR PLAN BENEFITS AGAINST ALL DEFENDANTS
## PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 74 as if fully stated herein and says further that:

75. Under the terms of the Plan, Defendant agreed to provide Plaintiff with long term disability benefits if Plaintiff became disabled as defined in the Plan.

76. Plaintiff is disabled under the terms of the Plan.

77. Defendant failed to provide benefits due under the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

78. The decision to deny benefits was wrong under the terms of the Plan.

18

79. The decision to deny benefits and decision-making process were arbitrary and capricious.

80. The decision to deny benefits was not supported by substantial evidence in the record.

81. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

82. The appellate procedures did not provide the Plaintiff a full and fair review.

83. As an ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

84. The Defendant violated the fiduciary duties owed to the Plaintiff.

85. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to which Plaintiff would have been entitled to under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

19

86. As a direct and proximate result of the conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring Defendant to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;

5. An Order requiring the Defendant and/or Plan to provide Plaintiff with any other benefits to which she would be entitled pursuant to a finding that she is disabled under the Plan;

6. Plaintiff's reasonable attorney fees and costs; and,

7. Such other relief as this Court deems just and proper.

Dated this 17th day of July, 2024.

20

BY: */s/ D. Seth Holliday*
D. SETH HOLLIDAY, ESQ.
GA Bar No. 426951
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com
*Attorneys for Plaintiff*