The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (800) 210-0268
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | June 17, 2024 |
| To: | SETH HOLLIDAY<br>MCMAHEN LAW FIRM, LLC<br>700 S. THORNTON AVE<br>PO BOX 1607<br>DALTON GA 30722 |
| Attn: | |
| Fax: | (706) 217-6880 |
| From: | Sarah Boyle<br>Claims Resolution Specialist<br>Phone No.: (800) 210-0268<br>Secure Fax No.: (603) 334-0401 |
| Total Pages (Including Cover): | 9 |
| RE:<br><br>Claim #: 12827197<br>Claimant: Sabrina Guerrero<br><br>Gentiva Health Services, LLC | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (800) 210-0268 and permanently shred the original and any copy of any fax and any printout thereof.

EXHIBIT
2

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (800) 210-0268
Secure Fax No.: (603) 334-0401

June 17, 2024

Seth Holliday
McMahen Law Firm, LLC
700 S. THORNTON AVE
PO BOX 1607
DALTON, GA 30722

RE: Long Term Disability (LTD) Benefits
Gentiva Health Services, LLC
Claim #: 12827197
Claimant: Sabrina Guerrero

Dear Seth:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond July 27, 2023.

**Initial Claim Decision**

Ms. Guerrero submitted a claim for her absence from work as of February 26, 2022, as a result of Post COVID-19. LTD benefits were approved from May 28, 202 through July 27, 2023. Benefits beyond July 27, 2023 were denied as the evaluation concluded she was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated July 27, 2023. Ms. Guerrero was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, she was advised to submit the following information:

*All documentation from all treating providers for the period of 2/8/23 through the present, or any of your other treating providers that would show evidence that you do meet the definition of disabled continuously from your own occupation, such as: test results with positive findings, such as an MRI or CT Scan, or, office visit notes that document physical exam findings, hospitalization records, lists of prescription medications with their start date/dosages, a detailed treatment plan which would outline a description of your specific restrictions and limitations, and any physical or occupational therapy records. Please also submit the outstanding forms: Authorization, Claimant Information Form, and Claimant Supplementary Statement. If you have obtained another job please provide proof of employment pay-stubs and job description.*

*You should also provide any additional information that you feel will support your claim.*

**Appeal**

In your letter of appeal dated January 17, 2024, you stated this was notice that you were appealing the decision of denial, and you requested an additional 60 days to provide additional medical evidence to support the claim. In your March 25, 2024 letter, you advised you were enclosing 16 exhibits.

In support of your claim, you submitted the following information:

- Exhibit 1: Request to Admit. [sic]
- Exhibit 2: Dr. Phillips Medical Source Statement 3/19/24
- Exhibit 3: Benefit verification letter
- Exhibit 4: Baptist Eye Surgeons: medical records 2/20/23
- Exhibit 5: Center for Post Covid Care medical records 7/20/22 through 12/20/23
- Exhibit 6: Dr. Hussain medical records 2/15/23 through 12/12/23
- Exhibit 7: East Tennessee Pulmonary & Sleep medical records 7/13/22 through 10/24/23
- Exhibit 8: Endocrinology Consultants medical records 11/1/18 through 8/2/23
- Exhibit 9: Fast Pace Kodak Health medical records 12/26/23
- Exhibit 10: Orthopedic Clinic medical records 9/27/23 through 12/19/23
- Exhibit 11: Lifestance Therapists medical records 8/10/22 through 2/18/24
- Exhibit 12: Phillips Healthcare Group medical records
- Exhibit 13: St. Lukes Therapy Services medical records 3/21/22 through 6/22/22
- Exhibit 14: Tennova Bariatric Surgery medical records 2/22/21 through 12/13/23
- Exhibit 15: Tennova Surgical Associates medical records 2/18/23 through 11/13/23
- Exhibit 16: Social Security Notice of Award 9/26/23

In a conversation with your office on April 9, 2024, Natalie confirmed the appeal was complete and we could proceed with the review.

**Appeal Evaluation**

During the review of your appeal, Ms. Guerrero's claim was reviewed by Dr. Mahdy Flores, an independent physician who is dual board certified in Family Medicine and in Occupational Medicine, and by Dr. Warren Taff, an independent physician who is board certified in Psychiatry.

Family/ Occupational Medicine

Based on his review of the medical records, Dr. Flores concluded the diagnoses included Post-COVID-19 condition, fatigue, bilateral knee arthritis, generalized muscle weakness, and right knee contusion. Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, Ms. Guerrero has a supported level of impairment that translates into restrictions and limitations from July 28, 2023 ongoing. Dr. Flores cited shortness of breath, fatigue, muscle weakness, decreased endurance, using an assistive device for mobility, bilateral knee pain, and pain in her lower back. He also citied the MRI which showed cerebral ischemia with symptoms including headache, nausea, neck pain and stiffness, fatigue, weakness, twitching, and difficulty with gait. Dr. Flores stated the sum of the findings revealed that Ms. Guerrero has functional deficits secondary to post-COVID symptoms including SOB (shortness of breath), DOE (dypsnea on exertion), fatigue, and generalized muscle weakness. She also has

functional deficits secondary to bilateral knee pain and right knee contusion that warrant the placement of restrictions and limitations within the period of review. The supported restrictions included: unrestricted sitting, reaching at desk level, fine manipulation, and grasping; occasional standing, walking, lift/carry/push/pull up to 10 pounds, climb stairs with assistive devices as needed, balancing, stooping, kneeling, crouching, crawling, reaching overhead and below waist, using lower extremities for foot controls. The medical evidence does not support any side effects from the prescribed medications for the time frames noted above.

Psychiatry

Based on his review of the medical records, Dr. Taff concluded the supported diagnoses included major depressive disorder (MDD), generalized anxiety disorder (GAD), and obsessive compulsive disorder (OCD). Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, there is no supported level of impairment which translates into restrictions and limitations from July 28, 2023 to ongoing. While Ms. Guerrero's reported symptoms of depression, anxiety, tearfulness, feeling panicky at times and feeling overwhelmed are acknowledged, the available records do not include any evidence regarding a psychiatric condition to recommend activity restrictions. For instance, there are no incapacitating observations such as suicidality, extreme mood lability, difficulties with reality testing, observed deficits in thought processing, impaired hygiene, psychomotor disturbances, distractedness, crying spells, hallucinations, impairments in activities of daily living or cognitive impairment. The mental status exams were mostly unremarkable, apart from sad and anxious mood. In addition, there are no referrals to a higher level of care such as hospitalization or intensive outpatient program (IOP). Therefore, there are no psychiatric limitations requiring occupational restrictions. The medical evidence does not support any side effects from the prescribed medications for the time frames noted above.

Ms. Guerrero's claim was previously reviewed by a vocational consultant, who completed an occupational analysis in order to identify the material and substantial duties of her occupation as it is normally performed in the national economy. The analysis showed her occupation as Social Worker, Medical, is most often performed at a Sedentary physical demand level.

**S-Sedentary Work** - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally, and all other sedentary criteria are met.

Frequent sitting

- Occasional walking, standing, reaching (can be reduced by moving objects an ergonomically-correct distance from the body), handling/gripping/ grasping, fingering/typing/keyboarding
- No climbing, balancing, bending/stooping, kneeling, crouching/squatting, crawling

On April 30, 2024, copies of the medical reviews were sent to you, and you were provided with the opportunity to review and comment. Your response was due by May 20, 2024. In a letter dated May 20, 2024, you reported that you would require additional time to provide information, you requested an additional 30 days. In a May 21, 2024 letter, you were granted an extension until June 19, 2024.

We received a June 13, 2024 letter from you outlining several issues. In a conversation on June 14, 2024, you confirmed your response was complete and we should proceed with our review.

We wish to address each of the concerns outlined in your June 13, 2024 letter.

First, you state "…there is no requirement that the insured provide *only* objective medical evidence or other objective indica of disability. Since the policy does not say it, Lincoln does not have the authority to require it." You stated the "...consultants dismissed Ms. Guerrero's subjective complaints out of hand without meaningful analysis." Both Dr. Flores' and Dr. Taff's reports state they took into account the entire clinical picture. Dr. Flores' report notes Ms. Guerrero's reported symptoms of fatigue, headache, brain fog, and shortness of breath as well as her reported symptoms of weakness. His report states that the sum of the findings reveals she does have functional deficits secondary to post-COVID symptoms including SOB, DOE, fatigue, and generalized muscle weakness. She also has functional deficits secondary to bilateral knee pain and right knee contusion that warrant the placement of restrictions and limitations within the period of review. Dr. Taff's report cites Ms. Guerrero's reported symptoms of depression, anxiety, tearfulness, feeling panicky at times, and feeling overwhelmed. While Ms. Guerrero's reported symptoms of depression, anxiety, tearfulness, feeling panicky at times and feeling overwhelmed are acknowledged; the available records do not include any evidence regarding a psychiatric condition to recommend activity restrictions. The mental status exams were mostly unremarkable apart from sad and anxious mood. In addition, there are no referrals to a higher level of care such as hospitalization or intensive outpatient program (IOP). Both reviews state they do take into account Ms. Guerrero's subjective complaints.

Second, you state the policy "...allows for independent medical examinations and functional capacity examintaions. Lincoln failed to conduct any such examinations." While the policy does allow for independent exams, it does not require them. Your completed appeal was received in March 2024, which is 8 months after Ms. Guerrero's claim was closed, thus a current IME/FCE would not speak to Ms. Guerrero's physical abilities or her condition as of July 27, 2023, the date her claim was approved through.

Third, you state that the consultant ignored Ms. Guerrero's subjective symptoms. We will refer you to our above response to your first issue in which the reviewers do address Ms. Guerrero's subjective complaints.

Fourth, you state that "…an ability to perform material and substantial duties requires reliability, consistency, substantial capacity, psychological stability, and steady attendance." You state the "…medical consultants provided no meaningful analysis on any of these issues." Both Dr. Flores and Dr. Taff reviewed all of the information in the file and provided the supported restrictions and limitations. Neither reviewer found the medical documentation supported that Ms. Guerrero did not have sustainable or reliable capacity to perform full-time work.

Fifth, you stated "…consideration must be given regarding the modifications and help an individual requires for activities." Both Dr. Flores' and Dr. Taff's reviews and conclusions were based on a review of all the information contained in her claim file to date.

Sixth, you stated that Lincoln relied on third party vendors, including Exan Coordinators Network

(ECN) to condult file reviews. You cited information contained, at one time, on ECN's website and state the conflict of interest is clear. We disagree with your indication there is a conflict of interest.

Seventh, you state that "... Lincoln, as the fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Ms. Guerrero like that borne by a trustee under common law." You cite an ERISA complaint response from 2017 from Liberty Life Assurance Company of Boston, now Lincoln, and stated that this answer is part of Ms. Guerrero's claim file. You state that "... if Lincoln continues to deny Ms. Guerrero's long-term disability benefits it will fail to have behaved as a fiduciary in the instant matter." We disagree with your statement Linclon has not behaved as a fiduciary in the instant matter. Lincoln's responsibility is to administer the policy. As such, all claim decisions will be made based upon the policy provisions.

Eighth and finally, you state "…there are no challenges to Ms. Guerrero's credibility", and "Ms. Guerrero's treating physician have directly addressed her reliability, consistency, substantial capacity, psychological stability, and steady attendance." You stated the medical consultants have "…failed to substantially account for, much less, address, any of these issues." We ask you to please see the above response to your fourth issue.

It is important to clarify the existence of a medical condition/diagnosis in and of itself does not equate eligibility for disability benefits. The focus of our assessment was not whether or not a condition exists; but rather whether or not impairment exists that would preclude Ms. Guerrero from performing the duties of her own occupation.

**Conclusion**

We conducted a thorough and independent review of Ms. Guerrero's entire claim. In summary, we acknowledge that she may have continued to experience some symptoms associated with her condition beyond July 27, 2023. However, the information does not contain significant exam findings, diagnostic test results or other forms of medical documentation supporting her impairments and symptoms remained of such severity, frequency, and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of her occupation after that date.

Having carefully considered all of the information submitted in support of Ms. Guerrero's claim, our position remains that sufficient proof of her continued disability in accordance with the Policy provisions after July 27, 2023 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*Own Occupation Duration:*
*24 Month Own Occupation*

*"Disability" or "Disabled" means:*
*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"Material and Substantial Duties" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy.*

*"Proof" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*
*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*
*Proof must be submitted in a form or format satisfactory to Lincoln.*

*Disability Benefit*
*When Lincoln receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Lincoln will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Lincoln Proof of continued:*
*1. Disability;*
*2. Regular Attendance of a Physician; and*
*3. Appropriate Available Treatment.*
*The Proof must be given upon Lincoln's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Lincoln will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*
*For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.*

*Discontinuation of the Long Term Disability Benefit*
*The Monthly Benefit will cease on the earliest of:*
*…*
*9. the date the Covered Person is no longer Disabled according to this policy;*
*…*

*Legal Proceedings*

*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than one year after the time Proof of claim is required.*

*Notice and Proof of Claim*
*1. Notice*
*a. Notice of claim must be given to Lincoln within 30 days of the date of the loss on which the claim is based. If that is not possible, Lincoln must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Lincoln.*
*b. When written notice of claim is applicable and has been received by Lincoln, the Covered Person will be sent claim forms. If the forms are not received within 10 days after written notice of claim is sent, the Covered Person can send to Lincoln written Proof of claim without waiting for the forms.*
*2. Proof*
*a. Satisfactory Proof of loss must be given to Lincoln no later than 90 days after the end of the Elimination Period.*
*b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.*
*c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Lincoln within 30 days of the request for such Proof.*
*Lincoln reserves the right to determine if the Covered Person's Proof of loss is satisfactory.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information you wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and Ms. Guerrero's claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to Ms. Guerrero's claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If Ms. Guerrero's plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of Ms. Guerrero's claim have been completed, you have the right to bring a civil action under applicable law. Ms. Guerrero's employer's plan has a contractual limitations period of one year(s), which means that a lawsuit must be brought within one year(s) after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is June 17, 2025.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in the Gentiva Health Services, LLC Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Sarah Boyle
Claims Resolution Specialist
Phone No.: (800) 210-0268 Ext. 16117
Secure Fax No.: (603) 334-0401